## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>           **v.**<br><br>**56.   JOSE ADAN MARTINEZ CASTRO**<br>**a/k/a "CHUCKY,"**<br><br>           **Defendant.** | **Criminal No. 15-10338-FDS** |

### OPPOSITION OF THE UNITED STATES TO
### DEFENDANT JOSE ADAN MARTINEZ CASTRO'S
### MOTION FOR CHANGE OF VENUE

The United States hereby opposes the Motion for Change of Venue by

defendant Jose Adan Martinez Castro a/k/a "Chucky" (hereinafter, the "defendant"

or "Chucky") seeking to transfer his case to the Eastern District of Virginia.  *See*

Dkt. No. 1124.[1]  In his motion and supporting papers, the defendant raises two

arguments:  *first*, he claims, "the Government has not demonstrated venue lies

within Massachusetts;" *second*, he claims, "the interests of justice warrant a

change of venue to Virginia."  *See* Def. Mom. at 6.  Neither of the defendant's

arguments pass muster.

As to his first argument, it is clear that venue is proper in Massachusetts for

a RICO conspiracy such as the one charged in this case.  *See, e.g.*, *United States v.*

*Machado-Erazo*, 986 F. Supp. 2d 39, 54 (D.D.C. 2013) (citing law that venue is

---

[1]   This opposition cites defendant's motion (Dkt. 1124) as "Motion at __,"
defendant's memorandum in support (Dkt. 1124-1) as "Def. Mem. at __," and
defendant's affidavit in support (Dkt. 1124-2) as "Def. Aff. at __."

proper in a RICO prosecution in any district in which an act in furtherance of the conspiracy was committed by any co-conspirator, court rejected MS-13 defendant's argument that venue was not proper because defendants were part of a conspiracy that spanned Maryland, Virginia, and the District of Columbia). As to his second argument, the relevant factors and the interests of justice strongly weigh against transfer to Virginia, especially given the significant impact of the enterprise and its leadership on Massachusetts, and given the means and methods by which the co-conspirators conspired to conduct and participate in the affairs of the enterprise in Massachusetts. This Court should therefore deny defendant's motion.

## FACTUAL BACKGROUND[2]

### 1.   The Violent, Criminal Enterprise Known as MS-13

MS-13 or La Mara Salvatrucha is "one of the largest criminal organizations in the United States" and was the first and still only street gang designated by the United States as a "transnational criminal organization." Indictment, ¶ 5. In order to join MS-13, members are generally required to complete an initiation process that requires them to "engage in some significant criminal activity on behalf of MS-13, usually at least one murder of a rival gang member and a demonstration of loyalty by coming to the aid of or supporting an MS-13 member." *Id.* at ¶¶ 11-12.

---

[2]   On May 15, 2017, the grand jury returned a Fifth Superseding Indictment against the defendant and other leaders, members, and associates of MS-13. *See* Dkt. No. 1107 (Fifth Superseding Indictment). On May 31, 2017, the defendant filed a notice of waiver for arraignment and entered a plea of not guilty to the Fifth Superseding Indictment. Dkt. No. 1142. For purposes of this Opposition, the factual background is summarized from the allegations in the Fifth Superseding Indictment (hereinafter, the "Indictment").

As described in the Indictment, the defendant and other leaders, members, and associates of MS-13 conspired to and engaged in a pattern of racketeering activity to, among other things, "commit, attempt, and threaten to commit acts of violence, including murder and attempted murder, to protect and expand MS-13's criminal operations, including intimidating potential witnesses to MS-13's illegal activities." *Id.* at ¶ 28.  The alleged means and methods of the conspiracy included numerous acts of murder and attempted murder in Massachusetts.  *Id.* at ¶ 29.

**2.   Organizational Structure and Defendant's Role in MS-13 Hierarchy**

"MS-13 was organized in Massachusetts and elsewhere in the form of so-called 'cliques'—that is, smaller groups acting under the larger mantle of MS-13 and operating in a specific region, city, or part of a city."  Indictment, ¶ 6.  "MS-13 members from different cliques attended meetings together.  In Massachusetts and elsewhere, the MS-13 cliques met to discuss, plan, and report on, among other things, organizational issues; membership issues; illegal activity on behalf of MS-13; acts of violence committed by MS-13 members against rival gang members and others with the goal of achieving control of territory; law enforcement activity against MS-13 members; and those suspected of cooperating with law enforcement." *Id.* at ¶ 10.

"In order to organize and coordinate hundreds of cliques made up of tens of thousands of MS-13 members located in numerous disparate locations, MS-13 leadership in El Salvador organized the criminal organization into 'programs.'" *Id.* at ¶ 6.  "MS-13 generally organized its programs either by name—for example,

major cliques, such as the Hollywood clique—or by geography, such as the L.A. Program and the East Coast Program." *Id.* "Grouping the various cliques into these programs created a hierarchy that expedited the process of getting orders from leadership in El Salvador to the street and remitting money from the street back to leadership in El Salvador." *Id.*

Many of the cliques in Massachusetts fell under the "East Coast Program." *Id.* at ¶ 7. The defendant was the leader of the East Coast Program. *Id.* at ¶29.

### 3.   The December 2015 Meeting of the East Coast Program

On December 13, 2015, the defendant, who was "the leader of MS-13's East Coast Program in the United States, presided over a meeting of East Coast Program clique leaders" in Richmond, Virginia. *See* Indictment, ¶ 29(e)(iii). This meeting of the East Coast Program was held at the defendant's home. *See* Detention Affidavit of FBI Special Agent Jeffrey E. Wood, Dkt. No. 138 ("Det. Aff. at ¶45). "Clique leaders from Massachusetts, Ohio, Maryland, Virginia, California, and Texas were in attendance" at this meeting. *Id.*

One of the clique leaders in attendance was Oscar Duran, a/k/a "Demente," another defendant in this case, who travelled from Boston with CW-1 to attend the meeting. At the time of this meeting, Duran was the leader of the Molinos Loco Salvatrucha ("MLS") clique for the entire United States, as well as the leader of the Boston-area clique of MLS. Indictment, ¶ 29(e)(iii). CW-1 was a homeboy with the Eastside Locos Salvatrucha ("ESLS") clique in Boston, and unbeknownst to the other attendees, CW-1 secretly recorded this December 2015 meeting for the FBI.

During this December 2015 meeting, the defendant, as the leader of the East Coast Program of MS-13, "told the leaders [of the cliques that were part of the East Coast Program] that their cliques needed to be more active in killing rival gang members." *Id.* Shortly after that meeting, on or about January 10, 2016, Christofer Perez de la Cruz was murdered in East Boston, Massachusetts by various members and associates of MS-13, including Edwin Gonzalez a/k/a "Sangriento," a homeboy with the MLS clique. *See id.* at ¶ 29(e)(i). Duran, who had recently attended the meeting of the East Coast Program presided over by the defendant, authorized or "greenlighted" the murder of Christofer de la Cruz. *Id.* at ¶ 29(e)(iii).

4. **Anticipated Evidence Regarding Defendant's Involvement in Conspiracy and His Impact on MS-13 Activities in Massachusetts**

At trial, the anticipated evidence will include testimony from multiple cooperating witnesses identifying Chucky as the leader of the East Coast Program of MS-13, as well as the recording of the December 13, 2015 leadership meeting presided over by the defendant at his house. The government has provided a copy of that recording, as well as a preliminary summary translation, in discovery.[3]

The recording makes clear Chucky's participation in the charged enterprise and racketeering conspiracy, as well as his knowledge of, and influence on, MS-13 activities in Massachusetts. The recording provides first-hand insight into the inner workings of MS-13, including its organizational structure and hierarchy, and

---

[3]   The government produced a preliminary summary translation of this recording in discovery as document bearing production number USAO-GD-00029252 et seq. That document is attached to this Opposition as Exhibit 1.

shows how such meetings served as direct communication channels that helped relay messages about MS-13's policies, priorities, and procedures from MS-13 leadership in El Salvador all the way to the streets of Massachusetts.

Specifically, during the meeting, "Sugar"—the MS-13 leader overseeing the East Coast Program in El Salvador—provided Chucky and other attendees with instructions and guidance on MS-13 matters over the phone. *See, e.g.*, Ex. 1, USAO-GD-00029280-81. Chucky, in turn, gave in-person instructions and guidance to attending clique leaders, including Demente from Massachusetts. *See infra.* The evidence will show that Demente, as leader of the Molinos clique, provided ongoing instructions and guidance to Massachusetts clique members like Sangriento. Mere weeks after the December 2015 meeting, Sangriento and other clique members murdered Christofer Perez de la Cruz in Massachusetts after that hit was greenlighted by Demente. *See* Indictment, ¶ 29(e).

Additional highlights from the December 13, 2015 recording include:

Towards the start of the meeting, Chucky informed the attendees that he had been given authorization (i.e., by leaders in El Salvador) to make decisions, and they wanted to organize operations better because they had begun seeing differences and infighting among the cliques. *See* Ex. 1, USAO-GD-00029256.

Chucky asked each attendee to write the name of their clique and their personal name, *see id.*, and Sugar later asked each member via the phone to identify themselves by their name. *See* Ex. 1, USAO-GD-00029280. Demente, the Molinos

clique leader attending from Massachusetts, can be heard identifying himself as "El Demente de Molino." *Id.*

Later in the meeting, Chucky provided guidance about how to conduct "hits" with proper authority to best advance the mission and reputation of the group:

> In our program—in our program the whole clic needs to be united. They need to be united, here before anything the hits that are going to happen; these have to be coordinated and requested beforehand and evaluate whether they'll happen or not, homeboy, because look, there are clics that are doing things here, man, and I hear about it a week later after they did it and what's up with that? They end up looking bad and they make us look bad too, bro.

Ex. 1, USAO-GD-00029257-58.

Chucky went on to tell the leaders of the cliques to murder people as necessary to further the mission of MS-13, and he described the East Coast Program's policy on killing informants:

> This is why I'm telling you they need to plan it well and all the sons-of-bitches that are snitching, you know that you sons-of-bitches who are doing stuff … We are going to investigate them, man, and we are going to do a hit on those sons-of-bitches so he can see what's up and then we'll even go after their family, what the program says, homie.

Ex. 1, USAO-GD-00029258.

Chucky also gave instructions designed to maintain discipline within the cliques, promote the organizational hierarchy, and evade law enforcement. For example, he told the attendees to promote discipline within their respective cliques; cautioned people to not be influenced by rumor and to believe only the runners (i.e., the clique leaders who convey messages from MS-13 leadership in El Salvador); warned against wearing Cortez brand sneakers because those are now known by

law enforcement as MS-13 symbols; warned against moving in the streets in large groups; and warned against carrying knives longer than a certain length. Ex. 1, USAO-GD-00029258-59.

Chucky also informed the attendees that he wanted everyone to benefit from the gang's drug dealing activity, and when he had additional product, the cliques in the program could move the product and everyone could make money. *See* Ex.1, USAO-GD-00029264-65. The means and methods of the enterprise described in the Indictment include drug trafficking. *See* Indictment, ¶ 30.

Later, the conversation turned to the ESLS clique in Boston not wanting to join the East Coast Program and follow its rules. Chucky and CW-1 (a member of ESLS) discussed co-defendant Herzzon Sandoval, a/k/a "Casper," the leader of the ESLS clique in Massachusetts, who did not want to join the East Coast Program, and Chucky suggested killing Casper:

| | |
|---|---|
| CHUCKY: | Who is this guy? |
| CW-1: | Casper. |
| CHUCKY: | And why don't you kill him?  Why don't you get together— |
| CW-1: | Well, that is the plan we have right now.  Since we're like only some 30, but we are older, we are planning, like some seven homeboys who are the ones who coordinate. |
| CHUCKY: | You are all older? |
| CW-1: | Yes. |
| CHUCKY: | So why haven't you [UI]. |

Ex. 1, USAO-GD-00029266-67.

Chucky also provided guidance making clear that members who break rules need to be disciplined.  He went on to say that if a "runner" does not discipline a misbehaving member, both that runner and the member will face discipline.  He stated that anyone breaking the rules would be disciplined twice, once on behalf of the clique and once on behalf of the program.  Ex. 1, USAO-GD-00029274.  This is another example of Chucky providing guidance and instruction to MS-13 clique leaders, including Demente from Massachusetts, so that those leaders could go back to their respective states and relay that guidance and instruction to their respective clique members.

In summary, the defendant supervised a meeting of the East Coast Program attended by at least two MS-13 homeboys who travelled from Massachusetts; the defendant provided guidance and instruction to clique leaders for the East Coast Program, including those operating in Massachusetts, so that those leaders could convey that information to clique members in their respective states; and the defendant inquired about activities in Massachusetts and provided guidance on the means and methods of the conspiracy and how to conduct the enterprise's business in Massachusetts and other parts of the country.

## **ARGUMENT**

"Venue is not an element of the offense, and it must be proven only by a preponderance of the evidence."  *United States v. Lanoue*, 137 F.3d 656, 661 (1st Cir. 1998); *see also United States v. Valenzuela*, 849 F.3d 477, 487 (1st Cir. 2017) ("With respect to sufficiency of venue, the government must prove venue by a

preponderance of the evidence."). Given the charged enterprise's extensive criminal activities in Massachusetts, venue is proper in this District under Fed. R. Crim. P. 18. Further, given the factors used to analyze discretionary transfer under Fed. R. Crim. P. 21, and given the significant means and methods employed in Massachusetts by members of the charged conspiracy, this Court should not transfer the case to the Eastern District of Virginia.

1. **Venue is Proper in Massachusetts Under Fed. R. Crim. P. 18.**

Defendant's first argument regarding venue is that "the Government has not demonstrated venue lies within Massachusetts" and "no offense for which the Defendant could allegedly be held accountable was committed in Massachusetts." Def. Mem. at 6. This Court should reject this argument because it fails to address the law on venue as it relates to conspiracy cases—venue is proper in this district because the charged MS-13 enterprise and racketeering conspiracy extended to Massachusetts.

Unlike civil RICO cases, the RICO statute does not contain a specific provision that governs venue in criminal cases. As such, the general venue statute governs, which provides, "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a) (also discussing "continuing offenses").

Under 18 U.S.C. § 3237(a), a RICO offense is a "continuing offense" and hence may be brought "in any district in which such offense was begun, continued, or completed." *See, e.g.*, *United States v. DeJesus*, 48 F. Supp. 2d 275, 278 (S.D.N.Y. 1998) ("Racketeering offenses under 18 U.S.C. § 1962 are continuing offenses within the meaning of the venue statute."); *United States v. Aiken*, 76 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 1999) (holding that RICO and related offenses under 18 U.S.C. § 1959 are continuing offenses under the venue statute).

When it comes to continuing offenses, venue is proper in any district where any part of that offense took place. *See, e.g.*, *United States v. Scott*, 270 F.3d 30, 35 (1st Cir. 2001) ("Venue must be determined from the nature of the crime alleged, determined by analyzing the conduct constituting the offense, and the location (or, *if the crime is a continuing one*, locations) of the commission of the criminal acts. If the crime consists of distinct parts, taking place in different localities, then *venue is proper wherever any part can be proved to have taken place*.") (emphasis added); *see also United States v. Umana*, 750 F.3d 320, 335 (4th Cir. 2014) (holding that for purposes of venue, if the criminal conduct spans multiple districts, the crime may be tried in any district in which at least one conduct element was committed).

In his motion, the defendant attempts to highlight his lack of contacts with Massachusetts and argues that venue is improper because he did not personally commit illegal acts in Massachusetts. *See* Def. Mem. at 1-5. This argument is misplaced. The key issue for venue purposes is not whether the defendant himself

11

committed illegal acts in this district—the key issue is whether the defendant participated in a criminal enterprise that committed illegal acts in this district.

When viewed through that prism, it becomes clear why courts around the country have held that venue is proper in RICO cases in any district where part of the charged conspiracy began, continued, or was completed. *See, e.g.*, *Aiken*, 76 F. Supp. 2d at 1349-51 (venue proper in Southern District of Florida for murder in aid of racketeering committed in New York); *United States v. Giovanelli*, 747 F. Supp. 875, 884 (S.D.N.Y. 1989) ("[V]enue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the conspirators."); *United States v. Persico*, 621 F. Supp. 842, 858 (S.D.N.Y. 1985) (rejecting venue challenge because there is broad venue to prosecute a continuing criminal enterprise and venue is proper as long as the government can prove that the defendant participated in an enterprise that conducted illegal activities in the district).

Even taking defendant's assertion that he has never been to Massachusetts at face value, *see* Def. Aff. at 1, there is simply no requirement that a defendant in a charged conspiracy—RICO or otherwise—be physically present in a particular district for venue to be proper in that district. *See, e.g.*, *Persico*, 621 F. Supp. at 858 ("It is of no moment that an[ ] individual moving defendant was not in this District so long as the government establishes that the defendant participated in an enterprise that conducted illegal activities in [this] District."). These principles are also consistent with how venue is analyzed in non-RICO conspiracies. *See, e.g.*,

*United States v. Santiago*, 83 F.3d 20, 24–25 (1st Cir. 1996) ("[I]n a conspiracy case, venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place, even if a particular coconspirator was not himself physically present in that district.").

Taken to its logical conclusion, defendant's argument would mean that individual defendants who are part of a large national enterprise could not be tried together if the conspiracy involved predicate acts by different co-conspirators in different jurisdictions.  Such an argument must be rejected.  *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 61 (1989) (holding that under state RICO statute patterned after federal RICO statute, there is no requirement that all predicate acts be committed in jurisdiction where prosecution is brought; stating that "such a rule would essentially turn the RICO statute on its head: barring RICO prosecutions of large national enterprises that commit single predicate offenses in numerous jurisdictions, for example").

Indeed, a defendant in a different MS-13 racketeering conspiracy challenged venue on similar grounds recently, and that argument was correctly rejected by the District Court for the District of Columbia.  *See United States v. Machado-Erazo*, 986 F. Supp. 2d 39, 54 (D.D.C. 2013) (rejecting MS-13 defendant's arguments that venue was not proper in the District of Columbia based on a claim that the crimes purportedly occurred in Maryland, the court held that the charged conspiracy was a continuing offense that spanned Maryland, Virginia, and the District of Columbia); *see also id.* at 47 (discussing how MS-13 cliques are interdependent units that share

13

common goals and operate essentially as franchises of MS–13, which has a three-tiered chain of command: (i) the leadership in El Salvador; (ii) programs, which are groups of smaller MS–13 cliques; and (iii) the cliques themselves).

The same conclusion is mandated here.  The anticipated evidence in this case will show how the charged conspiracy was a continuing offense that spanned jurisdictions, and will show how the charged enterprise similarly involved a three-tiered chain of command involving MS-13 leadership in El Salvador, Chucky's leadership of the East Coast Program, and local clique leaders in Massachusetts.

As charged in the Indictment: the defendant was part of an enterprise; that enterprise engaged in a pattern of racketeering activity; and numerous acts constituting the illegal activity, including predicate acts involving murder, occurred in Massachusetts.  Accordingly, venue is proper here and all members of the charged MS-13 enterprise, including the defendant, can be tried in the District of Massachusetts.

**2.     Transfer to E.D. Va. is Not Warranted Under Fed. R. Crim. P. 21.**

Defendant's second argument is that "the convenience of the Defendant and his potential witnesses warrant a change of venue to Virginia."  Def. Mem. at 6.  The burden is on the moving defendant to justify a transfer under Rule 21(b) *see, e.g.*, *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997).  The defendant cannot meet his burden here and this Court should deny his motion.

Fed. R. Crim. P. 21(b) states, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another

district for the convenience of the parties, any victim, and the witnesses, *and* in the interest of justice." (Emphasis added).  The language of the rule is conjunctive and the defendant has the burden of showing that both "convenience" *and* "the interest of justice" call for transfer to Virginia.  *See, e.g.*, *United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) ("Rule 21(b) links the two requirements—convenience and the interest of justice—and when a rule lists two requirements in the conjunctive, both must be satisfied."); *United States v. Quiles-Olivo*, 684 F.3d 177, 184 (1st Cir. 2012) ("Rule 21(b) lists both 'convenience' and 'interest of justice' conjunctively…").

In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964), the Supreme Court provided a non-exhaustive list of factors to consider when evaluating a Rule 21(b) motion, including: (1) location of the defendant; (2) location of potential witnesses; (3) location of contested events; (4) location of relevant documents; (5) location of counsel; (6) expense to the parties; (7) overall accessibility of the trial location; (8) a given district's docket condition; (9) potential disruption of a defendant's business if the case is not transferred; and (10) any other special factors in play.  *See also United States v. Hess*, 302 F.R.D. 283, 284 (D. Mass. 2014) (citing *Platt* factors and holding that defendant was not entitled to transfer); *United States v. Quiles-Olivo*, 684 F.3d 177, 186 (1st Cir. 2012) (citing *Platt* and holding that change of venue was not warranted).  Given those factors, the defendant cannot establish that either convenience or the interests of justice warrant a transfer.

As for the convenience prong, like in *Hess*, the defendant here "has not explained in detail what documents or evidence he will need to transport from [out

of state] to Massachusetts for trial," nor has he "provided information regarding the witnesses he plans to call, where they live, or why it would be difficult for them to testify in Massachusetts." *Hess*, 302 F.R.D. at 284.  The defendant simply asserts in a conclusory manner that "it is likely the Defendant would be deprived of witnesses on his behalf due to the excessive costs of traveling and obtaining lodging in Massachusetts for trial."  Def. Mem. at 6.  In addition to not providing specifics on any actual witnesses who may be inconvenienced, the defendant does not address the extent to which the Criminal Justice Act, Fed. R. Crim. P. 17, or 28 U.S.C. § 1825 may help pay the costs associated with securing defense witnesses for trial.

As for the interests of justice prong, the *Platt* factors strongly support venue in Massachusetts, not the Eastern District of Virginia.  The defendants and all their counsel are generally in or around the District of Massachusetts, and the same is true for the government, its agents investigating this case, and the victims and/or their families.  Importantly, the means and methods charged in the Indictment were committed in Massachusetts and the overwhelming majority of the evidence and witnesses are located here.

The organizational structure and communication methods of MS-13 meant that the defendant played an important role in relaying messages from leaders in El Salvador to clique leaders around the country, including leaders like Demente, who then brought violence to the streets of Massachusetts.  Given the significant impact of the enterprise on Massachusetts, including numerous acts of violence committed in Massachusetts, the interests of justice strongly favor trial in this District.

16

Lastly, to the extent that "a given district's docket" is a potentially relevant factor, the significant time and resources spent by this Court to oversee this case argue strongly against transferring one defendant to the Eastern District of Virginia and having the court in that district deal one-off with the myriad issues presented by the prosecution of this large enterprise. *See Zaffro v. United States*, 506 U.S. 534, 537 (1993) (discussing how there is a preference in the federal system for joint trials of defendants indicted together and how joint trials promote efficiency and serve the interests of justice).

Against this background, the defendant here, like in *Hess*, "has not shown that transferring his trial is warranted by convenience or the interests of justice." *Hess*, 302 F.R.D. at 284. Even assuming the defendant can establish that trial here would result in significant inconvenience—and here, he has made no such showing—"any inconvenience to [defendant] is outweighed by the convenience of the victims, witnesses, and attorneys." *Id.* Accordingly, this Court should deny defendant's motion to transfer venue to the Eastern District of Virginia.

> Respectfully submitted,
>
> WILLIAM D. WEINREB
> Acting United States Attorney
>
> By:     */s/ Kunal Pasricha*
> PETER K. LEVITT
> CHRISTOPHER J. POHL
> GLENN A. MACKINLAY
> KUNAL PASRICHA
> Assistant United States Attorneys
> United States Attorney's Office
> 1 Courthouse Way, Suite
> 9200 Boston MA 02210

17

## **CERTIFICATE OF SERVICE**

I, Kunal Pasricha, certify that on June 1, 2017, I served this document upon counsel of record by filing through the CM/ECF system.

*/s/ Kunal Pasricha*
KUNAL PASRICHA
Assistant United States Attorney
