UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSE ADAN MARTINEZ CASTRO )<br>   a/k/a "CHUCKY", ) | Cr. No. 15-10338-FDS |

**DEFENDANT JOSE ADAN MARTINEZ CASTRO'S SENTENCING MEMORANDUM**

Through counsel, Defendant Jose Adan Martinez Castro, a/k/a "Chucky", files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C., sec. 3553(a).

In his plea before Your Honor, Mr. Castro plead guilty to and accepted his responsibility for having engaged in the criminal conduct for which he is being sentenced, his role in so much of Count Two of the Indictment as charged Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity, in violation of Title 18, United States Codes, sec. 1962(d). The Defendant does not, and has not sought, to seek to minimize his role in the conspiracy.

The Government argues that no defendant had a more meaningful role in the organizational structure and leadership of MS-13 than Castro – this is simply not born out by the facts, or the single recording of an MS-13 meeting at the Defendant's home in Virginia. As far as the Defendant is aware, there is no other recorded conversation involving the Defendant. Moreover, of note, as far as the Defendant is aware, there were no recorded conversations or allegations of high level activity within MS-13 against the

Defendant in Virginia or the surrounding states.

The Government takes issue with the Defendant's position with respect to certain factual allegations which the Defendant contests, and suggests an upward departure from the PSR calculation of the Guideline Range of 151 to 188 months, based upon a total offense level of 34. (PSR, par. 92). This is simply not appropriate.

In challenging the accuracy of the recorded meeting, the Defendant does not deny that he was at the meeting or that the meeting was at his residence. The Defendant does not deny the translation as provided by the Government. The Defendant argues that the context of the meeting – the sole meeting of which the Defendant is alleged to have held – is not accurately captured by the recording. Quite simply, the Defendant contends that he was instructed to hold the meeting and the representations communicated by the Defendant at the meeting were representations he was ordered and or instructed to make. In so doing, the Defendant again acknowledges that he was engaged in the conspiracy.

## THE APPLICATION OF 18 U.S.C. §3553(a)

With the sentencing guidelines as advisory, the Court must now also look to 18 U.S.C. § 3553(a) to inform its sentencing decision. The sentence imposed must (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; and (C) protect the public from further crimes of the defendant

and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the kinds of sentences available
(3) the advisory guidelines
(4) any pertinent policy statement in the Guidelines Manual, which includes departures
(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

Other statutory sections also give the District Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate <u>means</u> of promoting correction and rehabilitation." (emphasis added).

### Nature and Circumstances of the Offense

Mr. Castro is not, as the Government alleges, the leader of the East Coast Program. Mr. Castro accepts responsibility for his role in holding meeting at his home in Virginia, and his role in his local clique, but simply was not the leader of the East Coast Program. It would appear that an accurate reading of the transcript of the meeting held at Mr. Castro's residence would reflect the following:

i. A number of participants were present from various cliques. The purpose of the meeting, in part, was to organize things. There is nothing in the recording that indicates the Defendant was the leader of the East Coast Program. At best, he was

        given authority to run the meeting. (Tr., p. 1).

ii.     The meeting was held at the direction of MS-13 in El Salvador so El-Salvador leaders could get the cliques in the United States to work together. (Tr., p. 12).

iii.    The Defendant does not order any killings.

iv.    The meeting closes with a purported call from a leader of MS-13, Sugar, and a discussion of how not all cliques were present at the meeting. It is Sugar that describes how members progress in cliques in El Salvador. It is Sugar that describes how cliques should work and dress. (Tr., pp. 12-15).

v.     Sugar, at one point in the transcript, say he wants to talk to people in the East Side Program and has a conversation with CW-1. (Tr., p. 16). There is mention of planning activity in the East Side Program and the Defendant is not part of that conversation or planning at all. (Tr., p. 16).

vi.    The transcript closes with CW-1 telling Sugar that they are going to close the meeting. (Tr., pp. 16-17). This is reflective of CW-1 holding a leadership role, and not the Defendant.

## The Defendant's Guideline Range

The Government takes issue with the Defendant's position with respect to certain factual allegations which the Defendant contests, and suggests an upward departure from the PSR calculation of the Guideline Range of 151 to 188 months, based upon a total offense level of 34. (PSR, par. 92). The Defendant contends the PSR calculation is not correct, because the Defendant contends that he did not direct any murders or participate in any murders. To the extent the single recorded meeting discusses murders, the Defendant contends that is simply "braggadocio" and puffing. For the same reason, the Defendant contends he should not be

4

afforded a 4 level adjustment for his role in the offense.

The Defendant further contends that he does not deserve a leadership enhancement. He has acknowledged his role in holding the meeting but his mere holding of the meeting is not sufficient to establish his leadership role. Particularly where the context of the meeting makes clear it was held at the direction of those in El Salvador and, at the end of the meeting, it is seemingly CW-1 that has the interest of Sugar and that calls the meeting to a close.

The Defendant further contends an enhancement for the use of minors is not appropriate. The discussion with respect to clique operations as set forth in the transcript is largely based on Sugar's account. There is no evidence that the Defendant is aware of that indicates he personally directed the recruitment of minors, or that minors were at the sole meeting that the Defendant held at his residence, or that the Defendant encouraged the recruitment of minors. This was, in large part, the basis for Probation declining to recommend a sentence enhancement.

At best, if the Court were to adopt the Probation base level offense as 33, the Defendant contends that the total offense level, after his acceptance of responsibility, is 30. The Guideline Range for the offense level of 30 is 97-121 months.

## The Defendant's Background

The Defendant notes that the Pre-Sentencing Report fairly accurately reflects his personal and family data. Mr. Castro is not in the United States legally and certainly will face deportation once his incarceration is over. Mr. Castro has no prior criminal history record, and was working at the time of his arrest in this matter.

## Appropriateness of the Sentence

The PSR determined the base offense level is 33 based on a finding by a preponderance of the evidence that the underlying racketeering activity was a conspiracy to commit murder.

The Defendant contends that the base offense level is not appropriately based on underlying activity being a conspiracy to commit murder. Further, the Defendant contends there is no evidence that he committed any murder or specifically directed any murder.

MS-13 is not a sophisticated transnational criminal organization. It does not have tentacles throughout the civilized world where organized crime can take over legitimate businesses as a means of laundering their ill-gotten gains. MS-13 sends money in small denominations to El Salvador where the leaders are located.

Intelligence gathered by law enforcement indicates that the gang has attempted in the past to become involved in major trafficking of heroin and cocaine but has failed.

One reason: "it is more of a social club than a lucrative criminal enterprise . . . . It has not clear hierarchy . . . . it is broken into local cells called 'clicas' . . . that are more loyal to each other than to the various leadership councils that operate around Central America And the U.S."

"Put simply, it has no leader. So, what looks on paper like a tremendous built-in infrastructure for moving illicit products across borders is actually a disparate, federalized organization of substructures with highly local, even competing interests."

"Finally, MS-13 is mostly about immediate gratification. It helps members eke out a living and get some perilous criminal thrills. "Dudley, Stephen S., Senior Fellow, Center for Latin American and Latin American Studies, American University, <u>MS-13 is a street gang, not a drug cartel – and the difference matters. The Conversation.com, March 20, 2018</u>.

Mr. Castro's involvement at the local level of MS-13 was limited to his activity with his local clique in Virginia. The Defendant has not been made aware of any activity allegedly conducted by his local clique with respect to murders. The meeting at the Defendant's home in Virginia was not for the purpose as the Government alleges.

## Conclusion

Mr. Castro prays this Honorable Court sentence him to 97-121 months, based on a Guideline Range of 30.

Respectfully submitted,

Jose Adan Martinez Castro, Defendant,

By his attorney,

_____
James M. Caramanica, BBO 565882
Law Office of James M. Caramanica
8 North Main St., Suite 403
Attleboro, MA 02703
(508) 222-0096

Dated: 7/17/18

## CERTIFICATE OF SERVICE

I certify that this document is filed under seal and copies will be emailed to the relevant parties.

_____
James M. Caramanica

Dated: 7/17/18