# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | Criminal Case No. |
| ) | 15-10338-FDS |
| v. ) | |
| ) | |
| JOSE ADAN MARTINEZ CASTRO, ) | |
| ) | |
| Petitioner. ) | |

## MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**SAYLOR, C.J.**

This is a motion to vacate, set aside, or correct a sentence by a prisoner in federal custody pursuant to 28 U.S.C. § 2255. On November 27, 2017, petitioner Jose Adan Martinez Castro pleaded guilty to conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). On July 18, 2018, the Court sentenced him to a term of imprisonment of 235 months followed by a term of supervised release of three years. Proceeding *pro se*, petitioner has filed a motion to vacate pursuant to 28 U.S.C. § 2255, alleging (1) ineffective assistance of counsel, on the ground that his attorney, James Michael Caramanica, failed to file an appeal despite petitioner's direct request that he do so (Ground One); (2) violation of his right to due process, on the ground that the Court impermissibly based its sentence on petitioner's ethnicity (Ground Two); and (3) ineffective assistance of counsel, on the ground that his attorney failed to object to certain sentencing enhancements (Ground Three).

For the reasons set forth below, the motion will be denied as to Grounds Two and Three. As to Ground One—that is, petitioner's claim that attorney Caramanica was ineffective for

failing to file an appeal—the Court will order petitioner and attorney Caramanica to submit further affidavits so that the Court may determine whether an evidentiary hearing is warranted.

I.   **Background**

The following facts are taken from the July 18, 2018 sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted. *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia*, 954 F.2d 12, 14 (1st Cir. 1992).

This case arose from an investigation into La Mara Salvatrucha, or MS-13, a transnational criminal organization that operates in the United States and is largely made up of immigrants from El Salvador, Honduras, and Guatemala. (PSR ¶¶ 10-11). In Massachusetts, the organization is run by the incarcerated leadership of MS-13 in El Salvador, but is organized into "cliques"—that is, smaller groups that operate in specific regions and have their own leadership who act under the rules of MS-13 leadership in El Salvador. (*Id*. ¶¶ 12-13). The cliques are in turn organized into "programs." (*Id.*). The Massachusetts cliques fall under the East Coast Program, which includes cliques from Maryland, Virginia, New York, New Jersey, North Carolina, Texas, and Ohio. (*Id*. ¶ 16).

The government's investigation revealed that petitioner was the United States-based leader of the East Coast Program. (*Id*. ¶ 22). On December 13, 2015, he hosted a meeting at his home for other leaders of the program, and the government obtained a recording of that meeting from a cooperating witness. (*Id*. ¶ 23).[1] At the meeting, petitioner stated that the purpose of the

---

[1] At his Rule 11 hearing, petitioner disagreed with certain items in the government's description of facts. (Rule 11 Tr., Dkt. No. 3131). Specifically, he stated that it was incorrect "that [he] gave orders for what people should do because everybody decides what they do in their life; not by my orders"; and that "for [him], in [his] opinion, that was not a meeting because [he] knew that there was somebody in there who was snitching or cooperating." (*Id.* at 17-18). The government responded that "[w]hether he's a leader or not, that's a question for another day, but [] Martinez Castro is [at least] saying he's a member" and "that's enough" for the Court to accept the plea, to which attorney Caramanica stated that he "agree[d]." (*Id.* at 18).

meeting was to better organize and coordinate activities between the cliques and that he had been given authorization to make decisions. (*Id*. ¶ 24). Among other things, he stated that the cliques needed to do a better job of planning and coordinating their hits (murders), including those of cooperating witnesses and their families; that hits had to be approved by leadership before they were carried out; and that the different cliques in the East Coast Program should remain united and work together. (*Id*. ¶¶ 26-27). The meeting also covered more specific issues. After hearing that a leader of a clique in Massachusetts known as "Casper" was causing problems, petitioner asked, "why don't you kill him?" (*Id.* ¶ 31). At another point in the meeting, he put "Sugar," the El-Salvador based leader of the East Coast Program, on the phone. (*Id.* ¶¶ 23, 32). Sugar spoke to the group about how to monitor "kid" members of MS-13, explaining that "the chequeos . . . . [must] make it first to paro, then to observation, then to chequeo until they make it to homeboy." (*Id.* ¶ 35). Petitioner was also present during a discussion of killing a teacher who had been disrespectful toward MS-13. (*Id.* ¶ 39).

On May 15, 2017, a federal grand jury returned a fifth superseding indictment charging petitioner and several of his codefendants with conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) (Count 2). (Fifth Superseding Indictment, Dkt. No. 1107). On November 27, 2017, petitioner pleaded guilty to that charge. (PSR ¶ 3). There was no plea agreement, and he therefore did not waive his right to appeal. (*Id.* ¶ 4; *see also* Sentencing Tr., Dkt. No. 3132, at 30 (advising him of his right to appeal)).

His sentencing took place on July 18, 2018. At that hearing, the Court calculated the guideline range as follows:

> The base offense level is 33, [and] [a] four-level enhancement is applicable for his leadership role and another two levels for the use of minors. That brings us to a level 39. With three levels off for acceptance of responsibility, that takes us to a level 36. His criminal history score is 0, his criminal history category is Roman

>Numeral I, [and therefore] his guideline range is 188 to 235 months, [and] his supervised release is 1 to 3 years . . . .

(Sentencing Tr. at 14-15).

The Court explained its reasoning for determining the base offense level as follows: "there [was] [not] any question that the conspiracy as a whole included murder" because the recorded conversation "captures the defendant personally discussing murders in the abstract . . . at least three times," including "killing 'Casper' who was a runner for a clique that did not want to be part of the program," and "he was [also] present when 'Sugar' talked about killing a teacher who disrespected the gang." (*Id.* at 4-5). As to the enhancement for defendant's leadership role, the Court explained that it applied because "[t]he organizational meeting in question was in his home"; "[h]e was clearly in charge" and "called upon clique members to be organized, [and] gave them instructions"; "[w]hen 'Sugar' joined by telephone from El Salvador, the defendant had the clique members introduce themselves"; and "there was no evidence of any kind . . . that [the meeting] [was] the product of coercion." (*Id.* at 6). It further determined that an enhancement for the use of minors should apply because "the use of juveniles within the scope of the conspiracy and in furtherance of it was reasonably foreseeable to [petitioner]" on the basis that (1) "'Sugar' on the phone talks about bringing kids into the clique"; (2) "close to every single member of this conspiracy was recruited as a juvenile, sometimes as a very young juvenile"; and (3) "defendant himself . . . adds to the inference that he knew that minors were being recruited into the gang because he himself was a minor when he was recruited into the gang." (*Id.* at 12-13, 26).

The Court imposed a sentence of 235 months—the top end of the guideline range—followed by a term of supervised release of three years, which was the government's

4

recommended sentence. (Judgment, Dkt. No. 2610 at 2-3). No direct appeal of petitioner's conviction or sentence was filed.

On July 15, 2019, petitioner filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Petitioner's Motion, Dkt. No. 3048). His motion raises three grounds for relief: (1) ineffective assistance of counsel, on the ground that his attorney, James Michael Caramanica, failed to file an appeal despite petitioner's direct request that he do so (Ground One); (2) violation of his right to due process, on the ground that the Court impermissibly based its sentence on petitioner's ethnicity (Ground Two); and (3) ineffective assistance of counsel, on the ground that his attorney failed to object to certain sentencing enhancements (Ground Three). (*Id.*; *see also* Petitioner's Memorandum, Dkt. No. 3049).[2]

On August 5, 2019, the government moved for an order authorizing and directing defendant's counsel to disclose otherwise-privileged matters so that it could respond to the petition. (Gov't Response, Dkt. No. 3074).

On September 10, 2019, the Court issued an order deeming petitioner to have waived the attorney-client privilege as to all communications with attorney Caramanica concerning the issues raised in the § 2255 petition. (Order, Dkt. No. 3106). The Court also ordered attorney Caramanica to produce and disclose to the government all materials and communications concerning the subject matter of the petition and to file with the Court an affidavit responding to

---

[2] Petitioner's motion stated as to Ground Three: "[t]he guilty plea in this case is an open plea because counsel would not negotiate a plea with limited sentencing exposure. At Sentencing, Counsel would not object to the lack of evidence presented by the government, to the amount of drugs, or to inapplicable enhancements." (Mot. at 4-5). The header for Ground Three stated "ineffective assistance of counsel in plea negotiations and in sentencing." (*Id.* (capitals in original)). By contrast, his memorandum of support alleged as to Ground Three—which was labelled as "counsel ineffective for failing to challenge factors relied upon in sentencing"—that counsel was ineffective because he failed to make certain objections at sentencing. (*See* Mem. at 5). It did not contain any allegations that counsel was ineffective in the context of plea negotiations. (*See id.*). Therefore, it appears that petitioner's contention that counsel improperly failed to negotiate a plea with limited sentencing exposure has been waived for failure to develop the argument. *See González–Morales v. Hernández–Arencibia*, 221 F.3d 45, 48 n. 3 (1st Cir. 2000) (failure to develop an argument waives it).

5

the petition, including setting forth any relevant details regarding communications, correspondence, and documents regarding the issues raised. (*Id*.).

On September 29, 2019, attorney Caramanica produced to the government 19 documents concerning the subject matter of the petition, and filed an affidavit responding to the petition. (Affidavit of James M. Caramanica, Dkt. No. 3110 ("Caramanica Aff."); Gov't Opp., Dkt. No. 3227, Exs. 1 and 2). The documents produced by attorney Caramanica included notes from communications with petitioner, copies of letters to petitioner, copies of e-mails between him and the government, and copies of phone call and visit logs between him and petitioner. (*See generally id.*).

## II.     Standard of Review

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255. *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

The court has authority to determine whether to grant an evidentiary hearing, based on a review of the record. *See* Rule 8(a), Rules Governing Section 2255 Cases. Although there is no right to an evidentiary hearing, the statute provides that "unless the motion and files and records

of the case conclusively show that the prisoner is entitled to no relief the court *shall* . . . grant a prompt hearing thereon." 28 U.S.C. § 2255(b) (emphasis added); *see McGill*, 11 F.3d at 225. However, "evidentiary hearings on motions are the exception, not the rule," and motions can often be "heard" on the papers alone; therefore, the petitioner carries a "fairly heavy burden of demonstrating a need for special treatment." *Id.* The court may forego a hearing when (1) the motion is inadequate on its face; (2) the movant's allegations, even if true, do not entitle him to relief, or (3) his allegations need not be accepted as true because they "state conclusions of facts, contradict the record, or are inherently incredible." *David*, 134 F.3d at 477-78; *compare id.* (affirming dismissal of a § 2255 motion without an evidentiary hearing where the petitioner alleged that he had learned of a favorable plea offer extended by the government that was not communicated to him until after its withdrawal, but offered "no specifics, e.g., who made the proposal, when it was tendered, what conditions were attached to it, why it was withdrawn, or how the petitioner came to hear of it"), *with Nembhard v. United States*, 56 F. App'x 73, 75-77 (3d Cir. 2002) (finding that a district court abused its discretion by failing to hold an evidentiary hearing where nothing in the record contradicted petitioner's allegation that "Counsel . . . failed to file a Notice of Appeal after being [] advised to do so by petitioner" even though he had not alleged when he made such a request).

### III. Analysis

As noted, petitioner raises three grounds for relief: (1) ineffective assistance of counsel, on the ground that his attorney failed to file an appeal despite petitioner's direct request that he do so (Ground One); (2) violation of his right to due process, on the ground that the Court impermissibly based its sentence on petitioner's ethnicity (Ground Two); and (3) ineffective assistance of counsel, on the ground that his attorney failed to object to certain sentencing factors (Ground Three).

### A. Ineffective Assistance of Counsel

#### 1. Legal Standard

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on such a claim, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Id*.

The first prong requires a petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Id*. at 689. A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007). The second prong requires petitioner to show that counsel's deficient performance resulted in "prejudice"—that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

#### 2. Ground One

Petitioner first contends that his trial counsel was ineffective because he requested that his counsel file a direct appeal on his behalf, but counsel never did.

The Supreme Court has "long held that a lawyer who disregards specific instructions from [a] defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). If a defendant does not instruct counsel to appeal, whether counsel performed unreasonably by failing to do so generally depends on whether he or she consulted with the defendant about appealing. *Id*. at 478. The term

"consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover [his or her] wishes." *Id.*

Counsel is not required to consult the defendant about an appeal in every case, however. Rather, he or she has a duty to consult the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. Although no one factor is dispositive, "a highly relevant factor in th[e] inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*[3] Even where a defendant pleads guilty, however, the court must consider factors such as "whether the defendant received the sentence bargained for as part of the plea" and "whether the plea expressly reserved or waived some or all appeal rights." *Id.* Counsel also may not need to consult the defendant about an appeal where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult." *Id.* at 479-80. And if counsel has consulted with the defendant, he or she acts in an objectively unreasonable manner only by disregarding a defendant's specific request with respect to an appeal. *Id*. at 478.

When counsel's unreasonable performance "deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of

---

[3] The court in *Flores-Ortega* provided the following example: counsel advises the defendant that a guilty plea would likely lead to a two-year sentence, the defendant expresses satisfaction with that outcome, and pleads guilty. *Id.* at 479-80. The court then sentences the defendant to two years as expected and informs the defendant of his appeal rights, and the defendant does not express interest in appeal. *Id.* In such a situation, if counsel concludes there are no nonfrivolous grounds for appeal, it is likely that he or she could constitutionally choose not to consult the defendant about appealing. *Id.*

9

counsel claim entitling him to an appeal." *Id.* at 484. In such a situation, there is a presumption of prejudice because the deficient performance "led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Id.* at 483.

Here, petitioner attested that "at sentencing, [he] requested his lawyer to file a direct appeal" and that "he [] sent letters to counsel, and his family [] phoned counsel many times." (Mem. at 2). For his part, counsel attested that "[he] [is] not aware of any request by the Defendant to file a direct appeal of his sentence." (Caramanica Aff. ¶ 4). Counsel's affidavit further stated:

> I did not file an appeal of the sentence as I did not understand the Defendant to have desired me to do so. This is based on my conversations and meetings with the Defendant relating to his sentencing. Those conversations and meetings led me to believe the Defendant simply wished to begin his sentence.

(*Id.*).

Counsel's affidavit thus directly contradicts petitioner's as to whether he requested an appeal. The government contends that it is clear from the extensive notes that counsel produced that if petitioner asked counsel to appeal, there would be some record of it. In addition, it notes that counsel did not disclose any of the letters that petitioner supposedly sent to him. Although the relevant documents counsel disclosed all predate petitioner's sentencing,[4] counsel attested that he was "not aware of any [] documents [other than those he produced] responsive to the Court's Order." (Caramanica Aff. ¶ 2).[5]

---

[4] The only document that counsel disclosed that postdates the sentencing is a letter that counsel sent to petitioner about the habeas petition on July 17, 2019. In addition, the government requested petitioner's phone records from the Plymouth County House of Corrections. (Opp. at 9, n.2; *id.*, Ex. 2 ("Phone Records"); Caramanica Documents at 1). Those records show a three-minute outgoing call from petitioner to counsel's number on July 25, 2018. (*Id.* at 1, 3). It was not recorded by the facility because the facility does not record conversations that might be privileged. (Opp. at 9, n.2).

[5] The government also contends that petitioner has not expressly alleged that he instructed counsel to file an appeal within 14 days of entry of the judgment. *See* Fed. R. App. P. 4(b)(1)(A) (noting that in a criminal case a defendant's notice of appeal must generally be filed in the district court 14 days after entry of the judgment).

10

In any event, if petitioner's allegation is taken as true, he may be entitled to relief. Therefore, on the current record, it cannot be said that the record "conclusively show[s] that under no circumstances could the petitioner establish facts warranting relief under [§] 2255." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotations omitted).

A further issue is whether, even if petitioner did not specifically request counsel to file a notice of appeal—that is, assuming counsel's affidavit is true—counsel nonetheless consulted petitioner about an appeal. *See Flores-Ortega*, 528 U.S. at 478. Counsel attested that "[he] did not understand the Defendant to have desired [him] to [file an appeal] . . . based on [his] conversations and meetings with the Defendant relating to his sentencing." (Caramanica Aff. ¶ 4). The most plausible interpretation of that statement is that counsel discussed the advantages and disadvantages of appealing with petitioner, but it is not conclusive one way or the other.

Under the circumstances, counsel may have been constitutionally required to consult with petitioner. The Court advised him of his right to an appeal at the sentencing hearing. (Sentencing Tr. at 29-30). Petitioner pleaded guilty, but there was no plea agreement, and he did not waive his appeal rights. The record reveals that plea negotiations broke down at some point, which may indicate that petitioner did not expect the sentence he received. An e-mail that the government sent counsel on October 9, 2017, refers to the plea negotiations in this case:

> Jim—this is a serious offer and we appreciate it. . . . [B]ut our original offer was that we would recommend the high end of what we believe is his correctly calculated GSR (188 months) and you could argue for whatever you wanted. Your offer is almost at the low end of the GSR (which is 151 months). If you want a plea agreement where we agree on the range and we can argue for whatever we both want in that range we could do that.

(Opp., Ex. 1 ("Caramanica Documents") at 10).

---

However, his memorandum of support, which was filed in the form of an affidavit, attested that he instructed him to file an appeal "at [his] sentencing." (Mem. at 2, 6).

11

The documents produced by counsel also include notes from a visit to petitioner on November 5, 2017, that indicate that he made petitioner aware of the government's offer of 188 months and that petitioner did not want to take it. (*Id.* at 23). Those notes further show that counsel made petitioner aware that the government would not agree to the petitioner's proposed number and that an "option is to go unagreed" and "ask for [the] low end of [the] guideline[s]," which appears to be the option they took. (*Id.*).

Under the circumstances, it appears that further details are needed before the Court can determine whether an evidentiary hearing is warranted as to Ground One. *See* Rule 7, Rules Governing Section 2255 Cases (noting that a court may direct the parties to "expand the record by submitting additional materials relating to the petition," which gives the government a chance to "admit or deny" the veracity of the supplemental materials). Accordingly, petitioner and attorney Caramanica are hereby directed to submit further evidence, including affidavits and any relevant exhibits, as to any communications they had (or did not have) about filing an appeal. Petitioner has stated in general terms that he told counsel to appeal at his sentencing hearing. He should provide further details, to the extent available, as to (1) the circumstances of that discussion, including where and when the conversation took place, and (2) the timing and content of any letters and phone calls concerning an appeal. Attorney Caramanica has stated in general terms that he did not understand that petitioner wished to appeal, based on his "conversations and meetings" with petitioner. He should provide further details, to the extent available, as to (1) whether he consulted petitioner about appealing; (2) whether he received any letters or phone calls from petitioner about appealing; and (3) whether he recalls any discussion at sentencing about appealing, and the timing and circumstances of any such items.

### 3. Ground Two

Sentences imposed on the basis of impermissible factors, such as a defendant's race or national origin, violate due process. *See United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991); *see also United States v. Borrero-Isaza*, 887 F.2d 1349, 1352-57 (9th Cir. 1989); *United States v. Gomez*, 797 F.2d 417, 419 (7th Cir. 1986). Petitioner contends that his sentence was impacted by "his association with an ethnic association." (Mot. at 4).[6] He contends that had he belonged to "the Cherokee Tribe[] instead of MS-13, there is a reasonable likelihood his sentence would [have been] lower," and that he was "sentenced more harshly than a similarly situated drug dealer [or] [] street gang member [would have been] solely because he was a member of the El Salvadoran Gang." (Mem. at 4).[7]

Here, there is no evidence that the Court sentenced petitioner based on his ethnicity or on his affiliation with MS-13, as opposed to his leadership of a criminal organization. *See* § 3B1.1(a) (providing for a four-level enhancement "if [a] defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive"). As noted, his guideline range was 188 to 235 months. (Sentencing Tr. at 29; Statement of Reasons, Dkt. No. 2611 at 1). The base offense level was enhanced due to his role as a leader and organizer of criminal activity and the use or attempted use of a minor to commit the offense. The Court explained its reasoning for imposing a sentence of 235 months as follows:

> This does pose a somewhat unique scenario here. The defendant is a high[-]level leader of a gang whose principal, if not only[,] purpose is murder or violence. Maybe that's all the analysis I need to make. It does give me some pause that the

---

[6] Petitioner cited the First Amendment in support, but the petition in fact appears to allege a violation under the Fifth Amendment. (Mot. at 4). Accordingly, the Court will consider whether petitioner is entitled to relief under that amendment.

[7] Petitioner contends that the Court impermissibly "departed upward from the sentencing guidelines due to [his] association with an ethnic association," even though he received a sentence within the guideline range. (Mot. at 4).

>direct evidence against him is this one recorded conversation, but as the government points out, it's a highly significant recorded conversation. It's not particularly subtle. It's clear that it's an organizational meeting, that the purpose of the meeting is to try to have greater control and greater organization within MS-13.
>
>And that is, obviously, a matter of grave concern. We punish conspiracies greater than we punish individual acts often because the harm is so much greater, and organized crime is among the worst type of criminal activity precisely because it is organized.
>
>So, the guideline range is 188 to 235 months. . . . I think the appropriate sentence under the circumstances is the government's recommendation of 235 months. I don't do that lightly.
>
>Again, it does give me pause. The unique circumstances of this particular case, again, the great weight placed on the single recording, and the fact that the defendant himself, there's no evidence he personally committed a murder or act of violence, but I'm persuaded by the government's arguments basically to the effect that it is necessary to impose significant punishments to leaders of organizations such as this and to put them out of commission and to impose significant punishments so that if the gang is to be crippled, or better yet, put out of commission, it can only be done by incarceration of the highest leaders.

(Sentencing Tr. at 26-27).

At no point did the Court mention petitioner's ethnicity, or even the connections between MS-13 and El Salvador. Furthermore, nothing about the sentence, or the stated reasons, suggests any form of ethnic or national-origin bias.

Accordingly, petitioner was not impermissibly sentenced due to his ethnicity, and the Court will not grant him relief on that basis.

### 4. Ground Three

Finally, petitioner contends that his counsel was ineffective because he failed to object to the following items that he alleges factored into the calculation of his guideline range: (1) the drug quantities for which he was found culpable; (2) his role as a leader and organizer of criminal activity; and (3) the use or attempted use of a minor to commit the offense. (Mem. at 5); *see* United States Sentencing Guidelines § 3B1.1(a) (providing for a four-level enhancement

14

"if [a] defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive"); *id.* § 3B1.4 (providing for a two-level enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense").

As to the first item, the underlying racketeering activity that factored into petitioner's sentence was conspiracy to commit murder, not conspiracy to distribute drugs. The PSR stated as follows as to petitioner's base offense level:

> The guideline for 18 U.S.C. § 1962(d) offenses is found in USSG §2E1.1. Pursuant to § 2E1.1(a), the base offense level is the greater of 19 or the offense level applicable to the underlying racketeering activity. At various times during the meeting on December 13, 2015, the defendant and his co-conspirators discussed murder. These conversations include[ed] the group being united because of hits that were going to happen (paragraph 26), the killing of cooperators (paragraphs 27), the killing of a clique leader who did not follow Program rules (paragraph 31), and the killing of a teacher who was disrespecting the gang, along with other "hits" (paragraph 39). Therefore, a preponderance of the evidence supports that the underlying racketeering activity was conspiracy to commit murder (USSG §2A1.5), which has a greater offense level as detailed below. During the meeting, *drug trafficking was also discussed*; however, *a group for this activity would not impact the offense level calculation and has not been included*.

(PSR ¶ 44 (emphasis added)). Accordingly, counsel was not ineffective for failing to object to any drug trafficking mentioned in the PSR because petitioner's sentencing guidelines were not impacted by that activity.

Furthermore, counsel in fact objected to the enhancement to petitioner's guideline range based on his role as a leader and organizer of criminal activity. (*See* PSR at 38 (describing Objection #5); Sentencing Memorandum, Dkt. No. 2603 at 3; Sentencing Tr. at 8). The sentencing memorandum he submitted in the case made such an objection:

> Defendant [] contends [that] he does not deserve a leadership enhancement. He has acknowledged his role in holding the meeting but his mere holding of the meeting is not sufficient to establish his leadership role. Particularly where the context of the meeting makes clear it was held at the direction of those in El

15

> Salvador and, at the end of the meeting, it is seemingly CW-1 that has the interest of Sugar and that calls the meeting to a close.

(Sentencing Mem. at 4-5).

The PSR also noted his objection:

> Objection #5: ¶¶ 48 and 50 [referring to a paragraph making an adjustment pursuant to § 3B1.1(a) and a paragraph calculating the adjusted offense level subtotal]:  The defendant denies that there should be an adjustment to his offense level . . . . [He] has admitted being present at the meeting [in Virginia] [,] [but] [] [he] denies the nature of the meeting and denies that he was in the position to give orders and denies that he acted in a leadership role.  [He] [also] contests the accuracy of the purported translation.

(PSR at 38 (emphasis removed)).  And counsel also objected to the application of that enhancement at the sentencing hearing:

> The evidence that the Court has, and Mr. Martinez Castro has not disputed it, [is] that [the] meeting was held at his home in Virginia.  The position is that he was instructed to hold the meeting, and he was really just reiterating what was being communicated to him, and I think at the meeting, CW-1 towards the end of the conversation, where he's talking to the person identified as "Sugar" also evidences somewhat of a leadership role.  That would be the defendant's argument.
>
> . . .
>
> I understand the Court's position with respect to making a determination that Mr. Martinez Castro had a leadership role, but all we have is this one conversation, and I suggest [that] if he was actually in a leadership role of the East Coast Program, as opposed to his small clique down there, there would be other evidence that we'd be made aware through Virginia or any of the other investigations taking place.  This is all we have is one isolated conversation with respect to Mr. Castro.

(Sentencing Tr. at 7-8).  Accordingly, petitioner's claim that counsel was ineffective for failing to object to the enhancement for his role as a leader and organizer of criminal activity is without merit, because he did in fact make such an objection.

Counsel also objected to the application of the sentencing enhancement for the use or attempted use of a minor to commit the offense. (Sentencing Mem. at 5; Sentencing Tr. at 7). His sentencing memorandum explained his objection as follows:

16

> The Defendant further contends [that] an enhancement for the use of minors is not appropriate. The discussion with respect to clique operations as set forth in the transcript is largely based on Sugar's account. There is no evidence that [] Defendant is aware of that indicates [that] he personally directed the recruitment of minors, or that minors were at the sole meeting that the Defendant held at his residence, or that [] Defendant encouraged the recruitment of minors. This was, in large part, the basis for Probation declining to recommend a sentence enhancement.

(Sentencing Mem. at 5).[8] He also objected to that enhancement at the sentencing hearing:

> There's nothing that I take away from that recorded conversation, and this is the only conversation that we're aware of that involves Mr. Castro that has him suggesting people recruit minors or anything. "Sugar" talks about how there's a progression in El Salvador and suggests that this is how—and this is in the conversation I believe he's talking to CW-1—how the progression should work, but I don't think there's any evidence before the Court that would allow for an enhancement with respect to the recruitment of children based on what we have here, and this is just that one recorded conversation.

(Sentencing Tr. at 7). Accordingly, petitioner's claim that he was ineffective for failing to object to that enhancement is without merit, because he did in fact make such an objection.

In summary, counsel was not ineffective for failing to object to the factors in question. As to the enhancements for the use or attempted use of a minor to commit the offense and for petitioner's role as a leader and organizer of criminal activity, counsel did in fact object to them. And any drug-related activity mentioned in the PSR did not impact petitioner's guideline range, and therefore, counsel had no opportunity to and reasonably did not object to any reference to such activity. For those reasons, the Court will not grant petitioner relief on the basis of Ground Three.

---

[8] Probation recommended that the enhancement for use or attempted use of a minor to commit the offense *not* be applied to the calculation of petitioner's guideline range. Therefore, the PSR notes the government's objection to probation's failure to apply that enhancement. (PSR at 35). At sentencing, the Court agreed with the government, and applied the enhancement.

17

## IV.     Conclusion

For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is DENIED as to Grounds Two and Three.  As to Ground One, petitioner Jose Adan Martinez Castro and attorney James M. Caramanica are each hereby ORDERED to provide further affidavits concerning communications as to an appeal, as outlined in this opinion.  Such affidavits shall be filed within 35 days of the date of this Order (that is, by November 29, 2021).

**So Ordered.**

Dated:   October 25, 2021

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court